# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. : 05-199-01 (JDB) |
| | : |
| v. | : |
| | : |
| DEWITT DAVIS, JR., | : |
| | : |
| Defendant. | : |
| | : |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing decision. For the reasons explained below, the government urges the Court to impose a sentence within the guideline sentencing range recommended by the Presentence Report.

### I.   BACKGROUND

On June 30, 2005, the defendant pleaded guilty to violating 18 U.S.C. § 2314, Interstate Transportation of Stolen Property. According to the presentence investigation report, he faces a sentencing range of 6 to 12 months imprisonment, *i.e.*, Criminal History Category I and Offense Level 10. Recognizing that the U.S. Sentencing Guidelines are now advisory, the government urges the Court to sentence the defendant to the sentencing range of 6 to 12 months. The government believes that such a sentence would appropriately recognize the defendant's criminal conduct and history.

### II.   SENTENCING CALCULATION

  A.   Statutory Maxima

The maximum sentence for Transportation of Stolen Property is ten years confinement. The maximum fine is $250,000.

B.  Sentencing Guideline Calculation

Both parties agreed to the Guidelines calculations utilized in the Presentence Report ("PSR") which correctly calculate the defendant's total offense level at 10. The PSR also has calculated correctly the defendant's criminal history as Category I.

C.  The Impact of Booker

The Court should impose a sentence within the 6-12 month guideline range.

In United States v. Booker, 2005 WL 50108 (U.S. Jan 12, 2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakey v. Washington, 124 S. Ct. 2531 (2004). In consequence, the Court invalidated the statutory provision that made the Guidelines mandatory: Title 18, United States Code, Section 3553(b)(1). Booker, 2005 WL 50108, at *16. However, the Court expressly refused to invalidate the Guidelines in their entirely. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who had committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence different from that described in the Guidelines. See 18 U.S.C. § 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Id. At *24.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker

2

at *27 (citing 18 U.S.C.A. §§ 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate - and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of ":reasonableness" review - it is plain that a sentence within the Guidelines, while not required, is reasonable per se, but it also accommodates the salutary goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in Section § 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. 994(m) (requiring Commission to "ascertain the

average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 2005 WL 50108, at *26; see id. at *27 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. Every Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at *21 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at *19 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at *42 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at *47 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity."). Since the Guidelines currently represent the only extant benchmark to encourage uniformity and thus the only tool to implement Congress' vision of

sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals.

Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines. Such a sentence will now be reviewed instead for its "reasonableness." See Booker, at *24. Nevertheless, the Guidelines -- resulting as they do from years of study of sentencing practices, crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C. § 3553(a) – provide the most concrete yardstick against which to measure what would be unreasonable. Booker not only prevents courts from substituting their individual judgment about the appropriateness of the Guidelines range without explaining with specificity their reasoning, Booker also continues to subject the explanation of the decision to sentence outside of the correctly calculated range to a court of appeals reasonableness review. See Section 3553(c) (mandating consideration of the Guidelines); section 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range); section 3742(f)(1) (mandating court of appeals to set aside a sentence imposed as a result of an incorrect application of the Guidelines); section 3742(f)(2) (mandating court of appeals to set aside a sentence outside the Guidelines range when the district court fails to provide a required statement of reasons in the judgment and commitment order).

Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances. This is so, said the court in United States v. Wilson, 2005 WL 78552 (D. Utah Jan. 13, 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry

out the purposes defined by Congress.  The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference.  Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness.  For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence.  In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons."  Id. at *1.  A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.[1]

In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for guideline sentencing.  Therefore, the government respectfully recommends that the Court sentence the defendant within the Guidelines range calculated in the PSR.

---

[1] In United States v. Ranum, No. 04-CR-0031 (D. Wisc., Jan. 19, 2005), the court takes issue with the observation in Wilson that post-Booker courts should depart only in unusual cases and for clearly identified and persuasive reasons.  Ranum's arguments are unpersuasive.  Ranum fails to explain why Booker, by severing the provisions which make the Guidelines mandatory, would invite courts to depart in usual or ordinary cases, or for unclearly identified or unpersuasive reasons.  Nor is an explanation for such a departure apparent in any other source.  Section 3553(a), which sets forth sentencing considerations, including reference to the Guidelines, is but one part of an entire statutory scheme.  For example, Section 3553(c), which mandates written explanations for the imposition of non-Guidelines sentences, remains intact.  To ignore the rest of the statutory scheme designed to effectuate the implementation of the considerations enumerated in the provision – in particular the expertise of the Sentencing Commission, the formation of the Guidelines, and congressional oversight of the Guidelines – would be an unreasoned approach to determining a sentence.

**III.     DEFENDANT SHOULD BE SENTENCED WITHIN THE GUIDELINE RANGE.**

In determining the appropriate sentence, the Court "shall consider . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). In this case, the defendant worked as professor at the University of the District of Columbia ("UDC") since 1984. Between 1997 and 2002, UDC had sought and received grant money from the United States Geological Survey ("USGS") in the amount of $45,000. The grant funds were designated to be used to research a water resource project. In an effort to steal the grant funds, Defendant Davis sent a direct deposit form to the USGS, directing the money to go into his personal account rather than the University account. Accordingly, approximately $45,000 was deposited into the personal account of Professor Dewitt Davis. Between May, 1998 and May, 2002, Davis purchased seven certificate of deposits totaling approximately $45,000.

It is a bedrock principle in our criminal justice system that each person is responsible for his actions and, as a result, accountable for them. Although he was a professor, given the defendant's age and lack of criminal record, the government respectfully requests that the Court sentence the defendant to a term of home confinement for a period of 60 days, a three year term of supervised release and an order to pay restitution to UDC in the amount of $45,000.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

_____
JULIEANNE HIMELSTEIN
ASSISTANT U.S. ATTORNEY
Fraud and Public Corruption Section
555 4th Street, NW
Washington, DC 20530
(202) 514-8203

## CERTIFICATE OF SERVICE

_____I HEREBY CERTIFY that a copy of the foregoing Government's Memorandum in Aid of Sentencing has been served by mail and telecopier upon counsel for defendant, Jon Norris, 641 Indiana Avenue, NW, Washington, D.C. 20004, on this day _____ of September 2005.

_____
JULIEANNE HIMELSTEIN
ASSISTANT U.S. ATTORNEY